**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| JAMES A. BROOKE, | NO. C10-399-MJP-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff James A. Brooke appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED and this case be dismissed with prejudice.

I.   FACTS AND PROCEDURAL HISTORY

At the time of his application, plaintiff was a 47 year-old man with some college education. Administrative Record ("AR") at 32, 396. His past work experience includes employment as a carpenter. AR at 430. Plaintiff was last gainfully employed in 2001. AR at 29.

REPORT AND RECOMMENDATION - 1

On December 31, 2003, plaintiff filed a claim for DIB.  On September 26, 2005, he filed an application for SSI payments, alleging in both applications an onset date of November 13, 2001.  AR at 26.  Plaintiff asserts that he is disabled due to drug and alcohol abuse, anxiety disorder, and right lateral epicondylitis.  AR at 29.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 26.  Plaintiff requested a hearing which took place on September 10, 2007.  AR at 390-435.  On January 24, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits.  AR at 26-39.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 6-9, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On March 10, 2010, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Mr. Brooke bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

In cases such as this, if it is found that claimant is disabled and there is medical evidence of a substance abuse disorder, then the ALJ is required to conduct a further analysis to determine if the substance use disorder is a contributing factor material to the determination of disability. In doing so, the ALJ must evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance abuse. If the remaining limitations would not be disabling, the substance use disorder is a contributing factor material to the determination of disability, and under this analysis, the claimant would not be considered disabled. 20 C.F.R. §§ 404.1535 and 416.935.

## V.   DECISION BELOW

On January 24, 2008, the ALJ issued a decision finding the following:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2004.

2. The claimant has not engaged in substantial gainful activity since November 13, 2001, the alleged onset date.

3. The claimant has the following severe impairments: drug and alcohol abuse, anxiety disorder, and right lateral epicondylitis.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, based on all of the impairments, including the substance use disorder, the claimant has the residual functional capacity to perform light work. He is able to lift 20 pounds, occasionally, 10 pounds frequently, stand or walk for about six hours, and sit for about six hours during an eight hour work day. He can do a job that requires at most occasional contact with co-workers and the public. However, due to his substance abuse, he would be absent from work at least two days per month.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1954[2], and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above.

10. Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform.

11. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

12. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart, P, Appendix 1.

13. If the claimant stopped the substance use, viewing the facts in the light most favorable to the claimant and giving the claimant the benefit of the doubt, he would have the residual functional capacity to perform light work. He would be able to lift 20 pounds occasionally, 10 pounds frequently, stand or walk for about six hours, and sit for about six hours during an eight hour work day. He can do a job that requires at most occasional contact with co-workers and the public and occasional climbing of ladders, ropes and scaffolds.

14. If the claimant stopped the substance use, the claimant would continue to be unable to perform past relevant work.

15. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

16. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity,

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

    there would be a significant number of jobs in the national economy that the claimant could perform.

17. Because the claimant would not be disabled if he stopped the substance use, the claimant's substance use disorder is a contributing factor material to the determination of disability.  Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR at 28-39.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in her evaluation of the medical evidence?

2. Did the ALJ err in her evaluation of the part "B" criteria of Mental Health Listings of Impairments? and

3. Did the ALJ err by concluding that plaintiff would not be disabled absent DAA?

Dkt. No. 13 at 2.

## VII.   DISCUSSION

A. <u>The ALJ Did Not Err in Her Evaluation of the Medical Evidence</u>

As an initial assignment of error, plaintiff alleges that the ALJ did not properly evaluate the opinions of Drs. Riabova, Washburn, Morrison and mental health counselors at the Kent Community Health Center.

*1.   Legal Standards for Reviewing Medical Opinions*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

*Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. Dr. Riabova

Katerina Riabova, M.D., Ph.D, is a psychiatrist who examined plaintiff in 2004. She diagnosed plaintiff with mood disorder with psychotic features, long-standing mental illness and social isolation and assigned a Global Assessment of Functioning ("GAF")[3] score of 45. Her prognosis was

> Appears to be limited. Physically, the patient is not fit to work. His memory is poor, but if he treats his mental illness, and at least decreases doses of Valium and Methadone, it may improve. His mood disorder certainly needs to be treated.
>
> PDD may be quite an issue. His social skills are poor, and at times things that he says sound odd. I suspect he will never completely fit into dynamic social atmosphere. He could work in an isolated place where he would be completely on his own and not interacting much with other people.

AR at 250-51.

The ALJ assigned "little weight" to Dr. Riabova's opinion. She found that plaintiff was not credible, that he made inconsistent statements to Dr. Riabova, that Dr. Riabova's assessment was inconsistent with the mental status examination, which was largely normal in the view of the ALJ, and that it was inconsistent with other medical evidence of record. The ALJ also discounted the report because she believed it was based primarily on plaintiff's self-report. AR at 38.

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." A GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas." *Id.*

1      Plaintiff argues that the ALJ erred by dismissing Dr. Riabova's prognosis that plaintiff
2  could work "an isolated place where he would be completely on his own and not interacting
3  much with other people" and Dr. Riabova's GAF assessment of the plaintiff.  The ALJ,
4  instead, determined the plaintiff's RFC limited him to "occasional" contact with co-workers
5  and the public.  Because "occasional" is defined as being up to one-third of the work day (see
6  AR at 244), plaintiff contends this overstates his capacity as opined by Dr. Riabova.  Dkt. No.
7  13 at 5.
8      The ALJ did not err in assigning Dr. Riabova's opinion little weight for the reasons she
9  provided.  First, much of Dr. Riabova's assessment is in fact based on self-reporting of the
10 plaintiff.  Plaintiff was found to be not credible, a finding not challenged, and indeed, plaintiff
11 has acknowledged that he has both integrity issues and that his own testimony is unreliable.
12 Dkt. No. 13 at 7.  This is an appropriate basis for rejecting a physician's opinion that is based
13 largely on a claimant's self-report.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).
14 In addition, the assessment was inconsistent with some of Dr. Riabova's mental status
15 examination.  Dr. Riabova's observations and testing of the plaintiff revealed he was
16 cooperative, made good eye contact, had fair memory, and was fully oriented.  AR at 251.  In
17 addition, plaintiff stated he liked to read about history and philosophy, was alert, and detail
18 oriented.  *Id.*  It is also true that Dr. Riabova found his speech odd, his thoughts circumstantial
19 and that he perseverates.  These latter facts, however, did not persuade the ALJ that there were
20 not substantial contradictions in the record between Dr. Riabova's direct test observations and
21 her conclusions.  The Court agrees, and this is a valid reason for the ALJ to discount Dr.
22 Riabova's opinion.  Contradictions between a physician's opinion and her clinical notes and
23 observations provide a "clear and convincing reason for not relying on the doctor's opinion."
24 *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  .
25      Finally, for reasons not evident in her report, Dr. Riabova concluded that plaintiff was
26 not physically able to work.  AR at 251.  Nothing in the record of her examination supports this

statement, which is a further basis upon which the ALJ could justifiably reject her opinion. Other physicians who examined plaintiff for physical impairments have rejected the conclusion that plaintiff had physical impairments that would preclude him from working. AR 175, 146, 216. The ALJ did not err in her treatment of Dr. Riabova's opinions.

     *3.  Richard W. Washburn, Ph.D.*

In July 2005, plaintiff was evaluated by Dr. Washburn. AR at 282-87. Dr. Washburn concluded that plaintiff lacked the emotional stability needed to cope with the normal stress of full-time gainful employment. He also found that plaintiff's mental health problems were not the result of alcohol or drug abuse, and that treatment would be unlikely to decrease the severity of plaintiff's mental health conditions. AR at 32. The ALJ assigned "little weight" to Dr. Washburn's opinion because: (1) it did not accurately account for plaintiff's substance abuse; (2) the opinion that his problems were unrelated to substance abuse was contrary to evidence of record; (3) plaintiff was not taking his medications at the time of the examination; and (4) the opinion was largely based on unreliable self-reports. AR at 31-2.

Each of the reasons offered by the ALJ is supported in the record, and each provides a basis for discounting the weight to be given to the opinion of Dr. Washburn. *See e.g.*, AR 283-84 (Dr. Washburn's opinion that plaintiff's conditions not caused by past or present alcohol or drug abuse and plaintiff's claims that he has alcohol abuse under control). *Compare with* AR at 337-40 ("He admits he has been doing some 'social drinking' and that any alcohol consumption is dangerous to him," "he has been doing some drinking—he claims not too much. Sometimes 'self-medicates'"). The ALJ may "discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings. *Batson v.Comm'r of Soc. Sec. Admin.*, 359 F. 3d 1190, 1195 (9th Cir. 2004).

In addition, Dr. Washburn's reliance upon plaintiff's self-reports is evident throughout his report. As was the case with Dr. Riabova's opinions, the lack of reliability of plaintiff's

REPORT AND RECOMMENDATION - 11

self-reporting, particularly in light of the uncontested credibility finding, provides an appropriate basis for discounting Dr. Washburn's opinion. *Tommasetti*, 533 F.3d at 1041.

The ALJ did not err in her treatment of Dr. Washburn's opinion.

### *4. Glenn Morrison, D.O.*

In 2007, Dr. Morrison saw plaintiff at Western State Hospital, as he had been admitted on a 15-day court-ordered evaluation from Renton Municipal court secondary to a DUI charge. AR at 358. Dr. Morrison "ruled out" major depression, noted a history of alcohol abuse, noted incarceration as a psychosocial stressor and assigned a GAF assessment of 30. The ALJ did not dismiss Dr. Morrison's evaluation. Indeed, the ALJ found plaintiff to be disabled when considering the effects of alcohol abuse. The ALJ did not err.

### B. The ALJ Did Not Err in Her Evaluation of the Part "B" Criteria for Mental Health Listings.

Plaintiff also alleges that the ALJ neglected to consider the sessions with plaintiff's mental health counselor when evaluating whether or not he met or equaled a Listing at step 3 of the disability evaluation process. Dkt. No. 13 at 6-7. Notes from plaintiff's mental health counselors are part of the record. AR at 314-41. In fact, the ALJ's opinion did include discussion of notes from these sessions. *See e.g.*, AR at 29, 31, 33, and 36 (referring to Exhibit 21F). Accordingly, the essential underpinning for this argument is missing. In addition, however, nothing has been presented by the plaintiff to indicate that plaintiff met a Listing, in the absence of substance abuse. The ALJ did not err.

### C. The ALJ Did Not Err By Finding that Plaintiff Would Not Be Disabled Absent His DAA

The ALJ found plaintiff to be disabled, but also found that he would not be if he stopped his substance abuse. AR at 38-9. Plaintiff challenges the ultimate conclusion, but does not offer any argument to support the challenge other than the previously discussed

interpretations of the medical evidence. Because the Court has rejected those challenges, it must find that substantial evidence supports the non-disability determination found by the ALJ.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED and this matter be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 20th day of January, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13